I am informed that all parties having cases on our calendar this morning are here, so I will turn to that calendar and call Ryan Lawyer v. Drew Cota and others. Thank you. Good morning, Your Honors. Good morning. Al Volk on behalf of the Appellant Ryan Lawyer. There are three basic issues in this appeal. The first, the District Court erred as a matter of law and fact when it granted Appellee's motion for clarification and reconsideration of a prior order of a different judge of the same court on a matter that had previously been decided and which was granted in part and denied in part. Second, the District Court erred as a matter of law and implied an erroneous standard of review in granting Appellee's renewed motion functionally to dismiss all claims. Finally, the District Court erred by repeatedly failing to take and accept the facts pleaded in the amended complaint as it's required to do and instead extrapolated out of it a standard that led to the court dismissing all claims on a basis of qualified immunity based on a finding pre-answer and pre-discovery that it was simply an honest, good faith mistake on behalf of the officers. It's clear that the coder lied in his affidavit, but if you take out the lie, isn't there still probable cause? Respectfully, no. Tell me why not. Certainly. Number one, there is no basis at all, I suggest rationally, for a court to have found probable cause had full disclosure been made that a human being handcuffed in a cell of a Vermont State Police barracks would possibly have been able to dislodge 100 packets of largest shoe on the face of the planet or one heck of a trap door in the shoe. Secondarily, indication in the record as to how large the package was? In the record, not yet, and that's largely because we are, as I'm sure Your Honors are aware, we are in the pre-answer, pre-discovery stage. But there's nothing that we can say about the size of the package. 100 packets. Well, yeah, these are little tiny glassine envelopes, so it's been a while since I've seen any at trial, but 100 sounds like a fair number, but I'm just curious as to whether anything describes it, so the answer is not. The answer is it certainly will if we proceed to discovery because it is patently obvious in the recording. It doesn't make complete sense, that's for sure, but they walk into the cell and he's lying there surrounded by glassine bags of heroin that had not been there before, and why isn't that at least arguable probable cause that he must be the source of those bags? Second point, Judge Chen, is the Vermont State Police, unlike some other organizations, has a promulgated written set of regulations and policies. Those policies, which are part of the record, those policies, and as pleaded in the complaint, require and mandate recording, video and audio recording. So I agree, I mean, with the benefit of hindsight for sure, they should have looked at the video, but they didn't, but what was, I mean, and maybe they were negligent in not looking at the video, but isn't it still, would every reasonable police officer have gone and checked the video first before they decided they had probable cause to arrest this man? I dare suggest yes, Your Honor, because of this reason. This is a state police barracks. We're talking about the, kind of the top of the law enforcement food chain. We're talking about it at a place, if nothing other than a sense of morbid curiosity, you would think that somebody would want to find out how a handcuffed, intoxicated human being could have done this in a shoot. Finally, and perhaps most importantly, and with respect to Judge Crawford, who I've known for a very long time and who I respect very much, the judge simply ignored the pleaded allegation in our complaint, that the motive for not doing so was a retaliatory motive. It's important to remember that my client was a passenger in the motor vehicle, and his friend was stopped for DUI and was being processed. Why did they want to retaliate him? Because, at least what's alleged, what is loutish, confrontational. He'd actually been arrested for like an impeding type of thing, not following directions. He was mouthy, was loud in the cell. So there was a retaliatory motive. Is there reason to suggest that he's dealing in heroin when they knew he wasn't? They may not have known that he... First of all, is the argument that they knew it wasn't his heroin? They certainly had reason to inquire, given the utter incongruity of the uncontested situation confronting them. This is anything other than a normal day at the Vermont State Police barracks that we're talking about here. Completely novel fact pattern. Are you saying that the police planted the heroin in the cell? Not at all. What we are saying is that it is patently obvious in cursory review for a matter of moments. Patently obvious cursory review is that somebody else did. It was clearly not my client. It was located and hidden under a commode, right there, and my client, drunk, was fiddling around with his foot. Something caught his eye. That's it. That's what happened. And that's what the video shows? That's absolutely. So I agree with Judge Chin that maybe this was negligence, not to look at the video before filling out the affidavit. But if we look at the affidavit without the unfortunate lie, isn't there still arguable, probable cause? That is the issue. Respectfully, we are in our brief and here. And that is, this is a very unusual and novel fact. And you are claiming that the affidavit was pejorious? We're claiming that the affidavit was no, it undoubtedly contained two knowing or recklessly false allegations. That is, that the cell was clean before my client was placed in it. It wasn't. And most egregiously, that my client confessed to having the heroin in his shoe. He didn't. And that is demonstrably true. If you remove those two, and again, juxtapose with the fact that there is this recording regulation and policy, we suggest that there is very, there is a more than arguably not probable cause under these novel circumstances. What's also more important, I think in a lot of ways, and we, to a degree, have conceded that in our briefs, this might actually ultimately become an issue if the matter is actually allowed to proceed as it should through the answer and discovery phase. No question about it. But we, you can't be making factual findings right now, which Judge Crawford respectfully did without authority to do so. You can't be making factual findings that lead to a conclusion about a subjective intent of law enforcement, that law enforcement made a good-faith, honest mistake. That's the linchpin of Judge Crawford's ruling. But I think Judge Crawford also was concluding that you weren't alleging intentional conduct because the tape apparently shows an unintelligible response. The way I see it, unintelligible response from the plaintiff on the tape, and the police officer could reasonably have interpreted to be, in essence, yeah, that stuff is mine. That's . . . again, with due respect, Judge Chin, that is premature to do that because you don't have any inquiry yet about why the officer did or didn't do that. We have . . . again, with respect to Judge Crawford, we have absolutely alleged intentional falsification, intentional or reckless. That is in the complaint several times. Secondarily, we have alleged retaliatory motive. And the law is crystal clear that as at this stage of things, the Court is required to accept the pleaded allegations. This is also an issue of qualified immunity with the officers to be free from the burden of the lawsuit itself. Isn't that right? It is, and we respectfully, as we've laid out in our briefing, Your Honor, we respectfully disagree strongly and actually agree with Judge Murtha's very careful decision. Judge Murtha considered it and ruled correctly on the limits and the extent of qualified immunity in the case. I see that my time is up. Thank you, Your Honors. Thank you, counsel. We'll hear from the government. State of Vermont. Thank you, and may it please the Court. My name is Bart Gangler. I'm an Assistant Attorney General with the State of Vermont. I represent the Appellees, Drew Cota, Ben Patnode, and Derek Rolandini, troopers with the Vermont State Police. We ask this Court to affirm the District Court's April 2018 order which granted Appellee's motion for reconsideration and clarification and properly decided the issue of qualified immunity, dismissing Appellant's complaint in its entirety. In so doing, the District Court properly exercised its discretion in granting the Appellee's motion for reconsideration and clarification, and it correctly decided that Appellee's were entitled to qualified immunity under the corrected affidavits doctrine, and that there was at least arguable probable cause for the possession of heroin charge. But it's still unpleasant to realize that the affidavit was not truthful. I believe the allegation . . . I believe the District Court, Judge Crawford, in the April 2018 order correctly determined that there wasn't an allegation in the face of the complaint that Officer Cota falsified a confession. I think he correctly said the allegation in the complaint was that the response was unintelligible, and I think under the corrected affidavits doctrine, even if we were to strike that confession, there is still three points. Appellant was lawfully under arrest. He was placed in a holding cell that appeared to be devoid of any heroin, and when they showed up to transport him sometime later, he was asleep and surrounded by a hundred packets of heroin. Right. So that would have been enough, but then they went on to say that he confessed that it was his. And again, that was . . . that's an allegation in the complaint, but the specifically, Appellant has . . . Don't we take the complaint as true at this stage of the proceeding? We do, Your Honor. And I think that the . . . while we take that as true, the issue of qualified immunity, there is still, under the corrected affidavits doctrine in Escalier v. Lund, we just strike that allegation and look at what a corrected affidavit would show. In the corrected affidavit, we did not need a confession on the . . . by Appellant in order to find probable cause. In fact, had he denied that the heroin was his, we still would have had probable cause for the possession of heroin charge. I agree with you. That's why it was totally unnecessary to falsify the affidavit. And doesn't it give you sort of a bad feeling about these troopers that they would falsify an affidavit when they didn't even have to? The heroin itself, it spoke for itself. I agree, and I think that we do not have the video in evidence at this time. However, from the video, it is simply an unintelligible response. It was not a out-and-out denial. It was not a protestation. It was simply they asked whether or not the heroin came from his shoe, and Appellant admits he was highly intoxicated and had just been roused. And at that point, what he responded could have been interpreted as an admission that the heroin did come from his shoe. And so from the . . . It would be fine to look at the tape because it's referred to in the complaint. But what were his words that could reasonably be interpreted as an admission that the heroin was in his shoe? It is simply a mumble on the audio tape. It is . . . A mumble. Yes. The cell has . . . Was that in response to an inquiry? Yes, it was, Your Honor. What was the inquiry? Did this come from your shoe? There was . . . One shoe was off, too, right? In the video, both shoes and socks were off. Both shoes were off. How do you respond to the argument that it doesn't make sense that a packet of 100 glycine envelopes of heroin . . . There's no way it could have fit inside a shoe? I think, first, I don't believe that is a specific allegation in the complaint. Second, I think the Court is allowed to use its judicial experience. And as Your Honor correctly pointed out, we have a heroin epidemic in the District of Vermont, and these judges are familiar with how drugs are packaged for transport. And Your Honor correctly pointed out that these are glycine envelopes. Tiny envelopes, but of a hundred of them, I do have a little trouble imagining how a hundred of them . . . And I think some of them had rubber bands on them, according to a description somewhere. I have difficulty imagining how that could have fit in someone's shoe. And I understand. I believe that a hundred of them packaged together is about the size of a matchbook. And speaking from my experience, I've had cases where people have body-packed that amount of heroin into a cell. And so I think it was reasonable for the Court to conclude that this could have been hidden in his shoe, or it could have been somewhere else. But the simple fact was, he was handcuffed to a bench, and when they came into the cell, he was surrounded . . . Was he searched before he was put in the cell? Yes, he was, Your Honor. However, it was a limited search, because he was arrested for simply impeding an investigation. Right, but he was searched for weapons, certainly. Correct. But I do not believe they strip-searched him or took his shoes off or did anything along those lines. There are some factual questions here. Yes. And your colleague suggests there ought to be some discovery to see exactly what the facts are. So how do you respond to that? And we disagree, simply because the criminal tribunal found probable cause, and therefore there was a presumption that probable cause existed. And it was appellant's burden to show that the finding of probable cause was based on the allegedly false statements that he complains of. Again, the esclare vi lun instructs the Court to strike those from the affidavit and look at what a corrected affidavit would show. And the corrected affidavit would show that the officers reasonably believed that this cell was clean. They put appellant in the jail cell. He was handcuffed to the bench. And when they showed up, he had clothes off and heroin surrounding him. His shoes were off. His socks were off. And it was reasonable for them to conclude that he was the source of the heroin. And so I believe that just on the face of the complaint, this is one of those cases where the motion to dismiss stage, because those allegations are both on the face of the complaint and in the record where we have included the actual affidavit of probable cause drafted by officer or trooper coda. And the court is allowed to consider that as well, because it was referenced in the complaint and incorporated. With respect to the allegation that there was malice, the court also correctly concluded that this was a good faith mistake. While plaintiff says that the allegation of malice needed to be accepted, that is not true. That is the exact allegation that was addressed by the United States Supreme Court in Ashcroft v. Iqbal. And the court there said the court is allowed, that is a legal conclusion, that the court is allowed to look at the facts on the face of the complaint and determine whether or not they support that legal conclusion. It was reasonable for this court to conclude that the facts were otherwise. We're also looking at what a reasonable police officer would have thought, right? I mean, that's the inquiry. Yes, Your Honor. And so that is the, whether or not reasonable officers could disagree whether or not probable cause existed. And in this case, reasonable officers who open a jail cell and find a defendant with heroin surrounding him on the floor, it was reasonable for officers to conclude that he was the source of the heroin and there was arguable probable cause. For the possession of heroin charge. Why wasn't it reasonable to say, let's go to the tape. I believe the officers did review the tape within a matter of days and the charges were immediately dismissed. I should hope. Yes. And in both the District of Vermont and in this circuit, there is no duty to perform an investigation as appellant sees fit. No, but it's this, um, surprising situation. It was a surprising situation. He was handcuffed to the bed, right? Yes, Your Honor. So he had to reach with his foot under the commode to get this out. So it wasn't easily available. And then they are on the floor. And why doesn't someone say, let's look at the required recording to find out how this happened? Um, I believe there's a few points there. One, I believe this was a extremely unique circumstance and I don't think anyone would have all the more reason to look at the tape. Well, I believe that the what actually occurred is almost unbelievable. I do not believe that the first reaction would be. He obviously was not the source of the heroin. He must have found it in a concrete cell with a stainless steel toilet. So I think that that alone, you know, from the officer's standpoint, it is whether or not his decision was reasonable on under qualified immunity. What happened was the troopers missed this packet of heroin that apparently some prior occupant had left there. Yes, Your Honor. And I'm a little embarrassing. That is a little unbelievable and embarrassing. It is, Your Honor. And we issued a press release correcting the mistake. And this was a good faced honest mistake. So that if something like this ever happened again, they would look at the tape recording before filing an affidavit with not true information. I believe the Vermont State Police have changed their procedures with respect to investigating cells prior to putting individuals in the holding cells. Yes, Your Honor. And I see that my time is about to expire. Thank you very much. Thank you. Both will reserve decision.